IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>v.<br><br>OSCAR TRINIDAD-RODRIGUEZ<br>    Defendant | CRIMINAL NO. 00-001 (PG) |

**SENTENCING MEMORANDUM**

**TO THE HONORABLE JUAN M. PEREZ GIMENEZ**
**UNITED STATES DISTRICT JUDGE**
**FOR THE DISTRICT OF PUERTO RICO**

**COMES NOW** defendant Oscar Trinidad-Rodriguez represented by the Federal Public Defender and before this Honorable Court respectfully states and prays as follows:

**I. Introduction**

This matter is before this Honorable Court for the re-sentencing of defendant Oscar Trinidad-Rodriguez. After having been found guilty by a jury on January 22, 2001 (Docket Entry, "D.E." #345), this Honorable Court sentenced Mr. Trinidad-Rodriguez under the then mandatory sentencing guidelines to a term of imprisonment of sixty-three (63) months and a supervised release term of three (3) years. However, on January 29, 2003, the First Circuit Court of Appeals vacated Mr. Trinidad-Rodriguez' sentence and remanded the case for re-sentencing.

Page 2

**II. Procedural Background**

On April 26, 2000 a Grand Jury in the District of Puerto Rico returned a Superceding Indictment against Oscar Trinidad- Rodriguez and other defendants (Docket Entry, "D.E." # 152) Mr. Trinidad-Rodriguez was charged along with seven other co-defendants of conspiracy to commit money laundering in violation of 18 U.S.C. §§1956 (h) and 1956 (a)(1)(B)(i)& (ii).[1]  Mr. Trinidad-Rodriguez was tried by a jury and was found guilty on January 22, 2001. (D.E. #345).

A Presentence Report was prepared and filed on June 29, 2001.  On August 12, 2001, Trinidad-Rodriguez filed his objections to the Presentence Report. (D.E. # 427).  According to the PSR, the applicable Guideline Section for a 18  U.S.C. §1956 offense is found in §2S1.1 of the Guidelines.  That section provides that offenses involving laundering of monetary instruments have a Base Offense Level of 20.  The United States Probation Officer then added three (3) levels under §2S1.1(b)(1) because "the defendant knew that the funds were the proceeds of an unlawful activity involving the distribution of narcotics or other controlled substances." An additional six (6) levels were added because the overall amount of laundered funds was more than $2,000,000 under §2S1.1(b)(2)(G),  for a  Total Offense Level of twenty-nine (29).  The TOL of twenty-nine (29) coupled with a Criminal History Category I, yielded  a U.S.S.G. sentencing Guideline range of eighty-seven (87) to one hundred and eight (108) months of imprisonment  as to Trinidad-Rodriguez.

Defendant Oscar Trinidad-Rodriguez objected to the application of the three (3) level upward

---

[1] Charges against two of the co-defendants charged with Count Two of the Superceding Indictment were subsequently dismissed.

Page 3

enhancement under U.S.S.G. §2S1.1(b)(1), arguing that he lacked knowledge that the funds were derived from drug sales.[2] He also objected to the six (6) level increase under §2S1.1(b)(2)(G), arguing that he should not be held accountable for an amount in excess of $2,000,000., that is, the totality of the funds involved in the conspiracy, inasmuch as the evidence presented at trial only linked him to two specific transactions in which he took part, which amounted to approximately $330,000, thus meriting only a two (2) level increase under U.S.S.G. §2S1.1(b)(2)( C). He also argued that he could not have reasonably have foreseen the total amount that would have been laundered through the conspiracy

At the sentencing hearing the District Court accepted that the trial testimony indicated that actual knowledge of where the money to be laundered came from could not imputed to Trinidad-Rodriguez) and denied the application of the three (3) level upward enhancement under U.S.S.G. §2S1.1(b)(1). (Sentencing Transcript "Sent. Tr.," p. 19) The Court also determined that Trinidad-Rodriguez could have reasonably foreseen the entire amount of funds laundered by the conspiracy, which was in excess of $2 million, thus warranting a six-level increase in Trinidad-Rodriguez' Base Offense Level under §2S1.1(b)(2)(G). (Sent. Tr., p. 18)

On August 16, 2001, the defendant was sentenced to sixty-three (63) months of imprisonment and three (3) years of supervised release. (D.E. # 431). In March of 2002, the defendant appealed this Honorable Court's sentence. The First Circuit affirmed Trinidad-Rodriguez'

---

[2] Other objections (failure of the USPO to consider to consider a two (2) point downward adjustment for acceptance of responsibility under U.S.S.G. §3E1.1(a) and failure to consider a downward adjustment for mitigating role as a minor participant under U.S.S.G. § 3B1.2(b)) were made as well, but they are not relevant to these proceedings.

Page 4

conviction, but found that the District Court erred in its determination of the amount of money attributable to Trinidad-Rodriguez. According to the Court of Appeals,

> "There is no direct evidence cited to us –in the presentence report, in the district judge's findings, or even in the government's brief –that Trinidad was aware of *any* money laundering beyond those in which he participated." "[I]t would be quite a leap to conclude even by a preponderance of the evidence that Trinidad therefore knew anything about specific transactions that Rivera had handled, let alone those handled by others." *United States v. Trinidad-Rodriguez*, 318 F. 3d 268, 274 (1st Cir. 2003)

Mr. Oscar Trinidad-Rodriguez' conviction was affirmed, but his sentence was vacated and the matter remanded for re-sentencing consistent with the Court's opinion.

### III. The State of the Law after *Booker*

Subsequent to Mr. Trinidad-Rodriguez' sentencing on August 16, 2001, the Supreme Court held in *United States v. Booker*, —U.S.----, 125 S. Ct. 738 (2005) that the Federal Sentencing Guidelines (hereinafter "Guidelines") were unconstitutional. The Court found that Guidelines violated the Sixth Amendment because they were not "guidelines" in any meaningful sense of the word. They obligated judges to find facts with specific consequences, consequences which were pre-ordained by the United States Sentencing Commission (hereinafter "Commission") and which increased a defendant's sentence beyond the range required by a jury's verdict or a plea of guilty. This constitutional defect required severance of the provisions of the Sentencing Reform Act of 1984 (hereinafter "SRA"), 28 U.S.C. §994 *et. seq.*, 18 U.S.C. §3551 *et seq.* that made the Guidelines mandatory, namely, 18 U.S.C. §3553(b)(1). The Guidelines are now to be considered "advisory," such that courts are to "consider" Guidelines ranges, see §3553(a)(4), but are permitted to tailor sentences in light of other statutory concerns. *See* §3553(a); *Booker*, 125 S. Ct. at 757-69.   In its

Page 5

remedy opinion, the Court severed 18 U.S.C. §3553(b)(1), which had rendered the Guidelines binding on federal sentences. *Id*. at 764. This left 18 U.S.C.§3553(a) in effect, which states:

> The court shall impose a sentence sufficient, but not greater than necessary to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed–
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentences and the sentencing range established for–
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines....;
>
> (5) any pertinent policy statement–
>> (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress...
>
> (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct;
>
> (7) the need to provide restitution to any victims of the offense.

The Supreme Court has provided no guidance regarding precisely what level of

Page 6

consideration district courts must give the Guidelines in order to arrive at a reasonable sentence. In addition, the First Circuit has yet to address this question. Various district courts have opined on the issue, and predictably, have developed differing approaches. *Compare United States v. Clay*, 2005 WL 1076243, at *1 (E.D. Tenn. 2005) (holding that "guidelines, although advisory and only one factor among others to be considered in arriving at a reasonable sentence, are entitled to substantial weight in the sentencing decision"), *United States v. Wilson*, 350 F. Supp. 2d 910 (D. Utah 2005) (holding that the Guidelines should be given "heavy weight" and that non-Guideline sentences should be imposed only in "unusual cases for clearly identified and persuasive reasons"), and *United States v. Peach*, 356 F. Supp. 2d. 1018 (D.N.D. 2005) (holding that Guidelines should be given "substantial weight" because they provide a "presumptively reasonable" sentence), with *United States v. Ranum*, 353 F.Supp. 2d. 984 (E.D. Wis. 2005) (holding that equal weight should be given to each factor listed in §3553 (a) and courts must resolve conflicts between §3553 factors and Guidelines), *United States v. Myers*, 353 F. Supp. 2d. 1026 (S.D. Iowa 2005) (same), *Simon v. United States*, 361 F. Supp. 2d. 35 (E.D.N.Y. 2005) (holding that Guidelines should be accorded the same weight as each other factor listed in §3553(a)), and *United States v. Jaber*, 362 F. Supp. 2d. 365, 367 (D. Mass. 2005) (stating that "'advisory' does not mean a regime without rules, or a return to the standardless sentencing which preceded the [Sentencing Reform Act]. Nor does it mean slavish application of the Guidelines under the guise of fair 'consideration' an approach which is now unconstitutional. 'Advisory' means something in-between..."). *United States v. Perry*, 2005 WL 2260196 (D.R.I).

In determining a statutory sentence, courts are bound by the mandate expressed in §3553(a):

Page 7

that they impose sentences that are sufficient but not greater than necessary, to comply with the purposes of sentencing expressed in the statute. These purposes are retribution, deterrence, incapacitation and rehabilitation. The factors that the court are to consider in determining a sentence are the facts relating to the offense and the defendant, the kinds of sentences available, the now non-mandatory Sentencing Guidelines range, the need to avoid unwarranted sentencing disparity, and the need to provide restitution where applicable. As to the amount of weight to be given to advisory guideline range vis-a-vis the other factors, it is the defendant's position that they should be treated equally. Should this Court decide that the advisory guideline range is the dominating factor, then Mr. Trinidad-Rodriguez objects on the basis that such treatment effectively makes the Guidelines binding again and thus violates his rights under the Sixth Amendment.

### IV. The Applicable Advisory Guidelines

In order for a sentence imposed under §3553 to be reasonable, a district court must begin with a correct determination of the guideline range. The guideline for a Title 18 U.S.C. §1956 offense is found in §2S1.1 of the Guidelines. That section provides that offenses involving laundering of monetary instruments have a base offense level of 20. The money laundering guideline gives no clue as to how to decide how much of a money laundering conspiracy to attribute to any individual member. This task is left to the relevant conduct guideline which, in a nutshell, makes this the sum of two figures: (1) how much was involved in transactions in which Trinidad participated, and (2) the amounts he reasonably foresaw would be handled in other transactions undertaken as part of the same "jointly undertaken criminal activity." *United State v. Trinidad-Rodriguez*, 318 F. 3d 268 (1st Cir.2005).

Page 8

In a conspiracy, the amount attributed to a defendant includes not only that which he handled, but also the mount he could reasonably have foreseen would be laundered through the conspiracy. *United States v. White*, 116 F. 3d 948, 951 (1st Cir. 1997); U.S.S.G. §1B1.3(a)(1) (2000).

Given the fact that there was no evidence that Trinidad-Rodriguez was aware of any money laundering transactions beyond those in which he participated, he cannot be held responsible for the entire amount of money laundered by the conspiracy. *Id* at 274   Trinidad-Rodriguez can only have foreseen the amounts of money implicated in the transactions in which he actually took part, which according to the Overt Acts described in the Superceding Indictment, included participation in two (2) specific transactions: the purchase of a forty foot (40') "Budweiser" racing boat for approximately one hundred thousand ($100,000.00) and the purchase of a forty foot (40') "Katana" racing boat for approximately two hundred thirty thousand dollars ($230,000.00). (*See* Superceding Indictment , p.5, para. 3-4 and pp. 8-9, para. 3to 3k.)    Under U.S.S.G. § 2S1.1(b)(2) (C) this amount, approximately $330,000.00, would merit only a two-level increase.   Since Trinidad-Rodriguez has no prior criminal convictions, he has a criminal history category of I.   Based upon a total offense level of twenty-two (22) and a criminal history of I, the guideline imprisonment range would be forty one (41) to fifty-one (51) months.

**V.  Factors Under 18 U.S.C. §3553**

Under the Supreme Court's decision in *United States v. Booker*, a court must look to 18 U.S.C. §3553(a) and impose a sentence which is "sufficient but not greater than necessary" to achieve the four purposes of sentencing set forth in §3553(a)(2). *Booker*, 125 S. Ct. at 764-65. In

Page 9

imposing sentence, the Court must also consider all of the factors set forth in §3553(a)(1)-(7).

The role of the sentencing court under the now-advisory guidelines has been eloquently described by Senior District Judge for the District of Massachusetts, Judge Edward F. Harrington:

> Although under *Booker* a sentencing judge is required to consult the Guidelines and to take them into account, the Guidelines merely constitute a generalized norm and are but one of the sentencing factors. Since all sentences relate to an individual human person, and not to a norm, a sentence must be shaped to the individual defendant involved in the particular crime by considering the individual sentencing factors. Thus, the Court in imposing an appropriate sentence shall follow the sentencing procedure set forth un *Sisson* [3], supra, by modifying the norm as influenced by its full examination of the individual defendant's personal characteristics, family responsibilities, medical and mental condition, criminal record and the particular circumstances surrounding the crime and imposing a sentence within the range set by Congress, after deep reflection informed by its experience in life and the law. *United States v. Lewis*, 375 F. Supp 2d. 1 (D. Mass. 2005)

The Guidelines should merely be considered as the starting point in this Court's analysis, without limiting its discretion to impose a sentence that is sufficient but not greater than necessary to achieve the goals of section 3553(a)(2). *See United States v. Hadash*, 408 F. 3d 1080, 1082 (8th Cir. 2005) citing *United States v. Mashek*, 406 F. 3d 1012, 1014 n.4 (8th Cir. 2005).

Mr. Trinidad-Rodriguez requests that this Court particularly consider the history and characteristics of the defendant as one the factors that it must now consider under when formulating a sentences that is sufficient but not greater than necessary, to comply with the purposes of sentencing expressed in 18 U.S.C. §3553(a).

**(a) History and Characteristics of the Defendant**

Oscar Trinidad-Rodriguez was born on December 27, 1957 in Santurce, Puerto Rico. He is

---

[3] *United States v. Sisson,* 326 F. Supp. 2d 203 (D. Mass. 2004)

Page 10

the son of Juan A. Trinidad and Adela Rodriguez, and has three sisters and one brother. Oscar Trinidad-Rodriguez was raised in Corozal, Puerto Rico, in a loving environment and with strong family values. Although he currently resides with his wife and children in Sanford, Florida, Mr. Trinidad-Rodriguez maintains frequent contact with the members of his family in Puerto Rico.

Oscar Trinidad-Rodriguez graduated from Emilio F. Delgado High School in Corozal and in 1974 and attended the University of Puerto Rico, Bayamon campus from 1975 to 1977. While enrolled, he participated in college ROTC and the police athletic league. He stopped attending college when he married and opened his own auto repair business.

Defendant Trinidad-Rodriguez has been married on three occasions and has procreated three children. The oldest, a twenty-three year old son from his first marriage, Oscar Trinidad, Jr., lived with the defendant while he was going to college in Florida, and currently is married and working in Florida. Trinidad-Rodriguez also has a fourteen year old daughter, the product of his second marriage. Eileen Trinidad currently lives with her mother in Marina Bahia, Cataño, and her father provides child support. Finally, Trinidad-Rodriguez has a five year old son, Juan Mateo Trinidad, the product of his current marriage, and a stepdaughter, Jesnayree who is twelve years old.

The defendant has lived in Sanford, Florida for the last past five years. He has been gainfully employed ever since he moved there, and at the present time is the manager for Tuffy's Auto Service. He has been an active member of the Central Baptist Church during this time and gives bible lessons to the churches's children. His own son, Jaime Mateo and his stepdaughter both attend this bible school. Oscar Trinidad-Rodriguez takes an extremely active role in his children's upbringing and his stepdaughter is an honor student and has received the President's Award. In

sum, Oscar Trinidad-Rodriguez, has an excellent employment history, solid community ties and has made consistent efforts to lead a decent life and provide an example for his children.

Incarcerating Mr. Trinidad-Rodriguez will not benefit anyone. Mr. Trinidad-Rodriguez is a first time offender, a person who became involved in a scheme which did not produce any economic benefit to him, and one in which he was unaware of the provenance of the funds laundered. There is no risk he will ever engage in this type of conduct again. Incarcerating Mr. Trinidad-Rodriguez will have an extremely adverse effect on his three children, not only because he will be absent from their lives for some time, but it will produce economic hardship for the family, as well as for his daughter in Puerto Rico. A sentence of probation to the maximum permitted by law will serve to reflect the seriousness of the offense and will provide just punishment for the defendant.[4] Furthermore, sentencing the defendant to probation instead of incarceration will be significatively less costly to the government.

### VI. Conclusion

In view of the foregoing, it is respectfully requested that this Honorable Court impose a sentence of probation on Mr. Oscar Trinidad-Rodriguez; in the alternative it is requested that the Court impose a sentence below the guideline range.

**WHEREFORE**, it is respectfully requested that the Honorable Court take notice of the present sentencing memorandum and that the defendant be applied a non-guideline sentence.

---

[4] 18 U.S.C. §1956 (3) ( C) establishes that whomever conceals or disguises the nature , location source, ownership or control of property believed to be the proceeds of specified unlawful activity shall be fined or imprisoned for not more than 20 years or both. Since the maximum term of imprisonment is twenty years, this is a Class C felony under 18 U.S.C. §3559, and thus eligible for a sentence of probation under 18 U.S.C. § 3561

Page 12

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, this 13th day of October, 2005.

        S/ Patricia A. Garrity
        Assistant Federal Public Defender
        USDC 204813
        241 F. D. Roosevelt Avenue,
        Hato Rey, Puerto Rico  00918-2441
        Tel.(787) 281-4922
        E-Mail Patricia_Garrity@fd.org

Page 13

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: AUSA Sonia Torres, Esq.  I further certify that on this date, a copy of this motion was sent via fax to  Patrick Hearn, Esq., Department of Justice Attorney, U.S. DOJ Narcotics Section, 1400 New York Ave, Office 8306, Washington, D.C. 20005, Fax (202) 514-0483

In San Juan, Puerto Rico, on this 13 $^{th}$ day of October of 2005.

S/ Patricia A. Garrity
Assistant Federal Public Defender
USDC 204813
241 F. D. Roosevelt Avenue,
Hato Rey, Puerto Rico  00918-2441
Tel.(787) 281-4922
E-Mail Patricia_Garrity@fd.org