IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>v.<br><br>OSCAR TRINIDAD-RODRIGUEZ<br>    Defendant | )<br>)<br>)   CRIMINAL NO. 00-001 (PG)<br>)<br>)<br>)<br>)<br>) |

**GOVERNMENTS' RESPONSE IN OPPOSITION TO DEFENDANT TRINIDAD-RODRIQUEZ'S SENTENCING MEMORANDUM**

**TO THE HONORABLE JUAN ME. PEREZ GIMENEZ**
**UNITED STATES DISTRICT JUDGE**
**FOR THE DISTRICT OF PUERTO RICO**

**COMES NOW** the government of the United States of America, through its attorney, Patrick H. Hearn, Trial Attorney, United Stated Department of Justice, Criminal Division, Narcotic and Dangerous Drug Section, and respectfully presents the following Government's Response in Opposition to the Defendant Trinidad-Rodriquez's Sentencing Memorandum

**INTRODUCTION**

The government adopts without objection the defendant's statement in his motion regarding the procedural history of the case and appeal. Additionally, the government concurs with the defendant's analysis of his Sentencing Guidelines calculations. The Court of Appeals found that the monetary amount from the two transactions, in which Trinidad-Rodriquez was involved, $330,000 was foreseeable and attributable to Trinidad-Rodriquez. Trinidad-Rodriquez's PSR placed his offense level at 20 with a criminal history of I. The $330,000 attributable to Trinidad-Rodrigquez will require a two-level increase in his offense level. This

increases his offense level to a 22 with a sentencing range of 41 to 51 months. The government recommends to the court the imposition of a 51-month sentence. The defendant has requested probation based upon the 18 U.S.C. §3553 factors of history and characteristics of the defendant. The government opposes any reduction of Trinidad-Rodriguez's sentence outside the guideline range of 41 to 51 months or the granting of probation.

In United States v. Booker, 125 S. Ct. 738 (2005), the Supreme Court held that the Sixth Amendment right to a jury trial, as construed in Blakely v. Washington, 124 S. Ct. 2531 (2004), attached to findings that enhance a defendant's sentence under the-then mandatory federal Sentencing Guidelines ("Guidelines"). The Booker Court found that it was the mandatory nature of the Guidelines that, when combined with judicial fact-finding, implicated the Sixth Amendment. In order to remedy this problem, the Court invalidated those provisions of the Sentencing Reform Act that make the Guidelines mandatory, thereby rendering the Guidelines advisory. The Booker Court emphasized, however, that district courts, while not bound to apply the Guidelines, must consult the Guidelines and take them into account when sentencing, *id.* at 757, 764, 767, thus requiring the courts to make the factual and legal determinations necessary to calculate a defendant's Guidelines range.

In determining the sentence to be imposed on Trinidad-Rodriguez this Court must therefore consider the provisions of the Guidelines as applied to the facts of this case, and rule on any disputed Guidelines issues, including any departure motions. In making that determination, this Court should give considerable weight to the Guidelines range recommended by the Probation Department in the Presentence Investigation Report. In this case, the sentencing range determined through the application of the Guidelines will yield a reasonable sentence, and the United States urges the Court to impose a 51 month sentence which is within that range.

ARGUMENT

I.  THE UNITED STATES SENTENCING GUIDELINES, WHILE
RENDERED ADVISORY BY <u>BOOKER</u>, MUST BE CONSIDERED
BY THE COURT AND WILL YIELD A REASONABLE SENTENCE.

**A. <u>The Booker Opinion</u>**

In <u>Booker</u>, the Supreme Court invalidated 18 U.S.C. § 3553(b)(1), the section of the Sentencing Reform Act that made the federal Guidelines mandatory, and 18 U.S.C. § 3742(e), the section of the Act that provided for a *de novo* appellate review which was based on the mandatory nature of the Guidelines.  125 S. Ct. at 756-69.  So modified, the Court concluded, the Act "makes the Guidelines effectively advisory." *Id.* at 756.  Under <u>Booker</u>, the Guidelines will be advisory in <u>all</u> cases, even where they could be applied without judicial fact-finding.  *Id.* at 768.

While <u>Booker</u> excised 18 U.S.C. §§ 3553(b)(1) and 3742(e) of the Sentencing Reform Act, thus rendering the Guidelines advisory, the Court reaffirmed that "the remainder of the Act satisfies the Court's constitutional requirements."  125 S. Ct. at 764.  The Court reaffirmed that "when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant."  *Id.* at 750.  The Court therefore ruled that "[t]he district courts, while not bound to apply the Guidelines, <u>must consult</u> those Guidelines and <u>take them into account when sentencing</u>."  *Id.* at 767 (emphasis added).  The Court emphasized that the Act still "requires judges to consider the Guidelines 'sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant,' . . . the pertinent Sentencing Commission policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide

3

restitution to victims." *Id.* at 765 (citing 18 U.S.C. §§ 3553(a)(1), (3), (4)-(7)).

### B. Sentencing Procedure After Booker

Booker emphasized that, although the Guidelines are now advisory, the sentencing process would proceed much as it did before. "[T]he Sentencing Commission remains in place, writing Guidelines." 125 S. Ct. at 767. The Probation Office will continue to prepare presentence investigation reports ("PSRs"), which as before should include "information (often unavailable until after the trial)" concerning the defendant's "real conduct." *Id.* at 759-60. District court judges may as always "rely[] upon" a PSR, after "giving the offender an opportunity to challenge the report." *Id.* at 760-62

In deciding the guidelines sentence the district court must consider all relevant conduct under U.S.S.G. § 1B1.3, because "[i]n any given case after Booker, a district court will calculate, consult, and take into account the exact same guideline range that it would have applied under the pre-Booker mandatory guidelines regime." United States v. White, 405 F.3d 208, 219 (4th Cir. 2005); *see* United States v. Serrano-Beauvaix, 400 F.3d 50, 55 (1st Cir. 2005) ("post-Booker, the district court 'must consult those Guidelines and take them into account when sentencing' . . . . so the court had to consider both role in the offense and [defendant's] criminal history") (quoting Booker, 125 S. Ct. at 767).[1]

---

[1] Indeed, all Circuits addressing the issue agree that a defendant's "Guideline range should be determined in the same manner as before" Booker. United States v. Mares, 402 F.3d 511, 519 (5th Cir.), *petition for cert. filed*, No. 04-9517 (U.S. 2005); *accord, e.g.*,; United States v. Crosby, 397 F.3d 103, 112 (2d Cir. 2005) ("Guidelines range is normally to be determined in the same manner as before"); United States v. Pojilenko, __ F.3d __, 2005 WL 1764930, at *2 (3d Cir. July 27, 2005) (even without the mandatory provision, the Sentencing Reform Act still requires judges to take account of the Guidelines and consider the Guidelines sentencing range established for the applicable category of offenses committed by the applicable category of defendant); United States v. Davis, 397 F.3d 340, 345 (6th Cir. 2005) ("[w]e read Booker to

Booker "requires a sentencing court to consider Guidelines ranges" (after considering any departures) and "take them into account when sentencing," but the Guidelines "recommend[], rather than require[], the selection of particular sentences" for a particular set of facts. 125 S. Ct. at 750, 757, 765, 767. A district court can then "tailor the sentence in light of other statutory concerns" set forth in 18 U.S.C. § 3553(a). *Id.* at 757. Thus, "[a]fter determining the Guidelines sentence (with any appropriate departure folded in), the court must still exercise its discretion to determine whether to vary from that sentence in light of the congressionally-prescribed purposes of sentencing" under Section 3553(a). Wilson II, 355 F. Supp. 2d at 1286; *see* United States v. Brown, 356 F. Supp. 2d 470, 479 (M.D. Pa. 2005) (Booker requires sentencing courts to calculate the "sentencing range under the Guidelines and then conduct[] a '§ 3553(a)-like' analysis").

## II.   APPLICATION OF 18 U.S.C. §3553(a)

Section 3553(a), "requires judges to consider the Guidelines 'sentencing range

---

require that when district courts consult the Guidelines, they are to continue to consider the sentence, sentencing range, and pertinent policy statements contained in those Guidelines"); United States v. Lee, 399 F.3d 864, 866 (7th Cir. 2005) ("the upshot of [Booker] is to increase district judges' sentencing discretion rather than reallocate any issue from judge to jury, change the burden of persuasion, or limit sentences to those that can be supported solely by the facts found by the jury"); United States v. Haack, 403 F.3d 997, 1003 (8th Cir. 2005) ("[i]n determining the appropriate guidelines sentencing range . . . , we see nothing in Booker that would require the district court to determine the sentence in any manner other than the way the sentence would have been determined pre-Booker"); United States v. Lawrence, 405 F.3d 888, 907 (10th Cir. 2005) ("the Supreme Court's holding in Booker would not have prohibited the district court from making the same factual findings and applying the same enhancements and adjustments to Lawrence's sentence as long as it did not apply the Guidelines in a mandatory fashion"); United States v. Crawford, 407 F.3d 1174, 1178-79 (11th Cir. 2005) ("sentencing court under Booker still must consider the Guidelines"; "such consideration necessarily requires the sentencing court to calculate the Guidelines sentencing range in the same manner as before Booker").

established for . . . the applicable category of offense committed by the applicable category of defendant,' the pertinent Sentencing Commission policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims." Booker, 125 S. Ct. at 764-65 (citing 18 U.S.C. §§ 3553(a)(1), (3), (4), (5)-(7)).  Furthermore, district courts must still "impose sentences that reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and effectively provide the defendant with needed educational or vocational training and medical care." *Id.* at 765 (citing 18 U.S.C. § 3553(a)(2)).

A court that deviates from the Guidelines by imposing a sentence outside the applicable advisory Guidelines range must still state "with specificity," both at sentencing and in the written judgment and commitment order, its reasons for doing so.  18 U.S.C. § 3553(c); *see* United States v. Mares, 402 F.3d 511, 519 (5th Cir.) ("when the judge elects to give a non-Guideline sentence, she should carefully articulate the reasons that she concludes that the sentence she has selected is appropriate for that defendant"), *petition for cert. filed*, No. 04-9517 (U.S. 2005); Crosby, 397 F.3d at 116 (Booker "left unimpaired section 3553(c), which requires a district court . . . to state in writing 'with specificity' the reasons for imposing a sentence outside the calculated Guidelines range"); United States v. Hughes, 401 F.3d 540, 546 & n.5 (4th Cir. 2005) ("[i]f the court imposes a sentence outside the guideline range, it should explain its reasons for doing so," because "[t]his requirement, from § 3553(c)(2), was not excised by Booker, and it continues to govern sentencing courts").  Further, as revised by Booker, the Sentencing Reform Act "continues to provide for appeals from sentencing decisions" under Section 3742(a), through which appellate courts may review the judge's exercise of discretion under Section 3553(a) for

"unreasonableness" in order "to avoid excessive sentencing disparities." 125 S. Ct. at 765-67.

Except in highly unusual circumstances, courts should sentence defendants within the applicable Guideline range, for several reasons. Wilson I, 350 F. Supp. 2d at 914, 925; Wilson II, 355 F. Supp. 2d at 1275; Wanning, 354 F. Supp. 2d at 1059-63; United States v. Peach, 356 F. Supp. 2d 1018, 1021-22 (D.N.D. 2005). First, a sentence within the applicable Guidelines range will comport with the statutory concerns set forth in Section 3553(a) because "the factors the sentencing commission was required to use in developing the Guidelines are a virtual mirror image of the factors sentencing courts are required to consider under Booker and § 3553(a)." United States v. Shelton, 400 F.3d 1325, 1332 n.9 (11th Cir. 2005). In formulating the Guidelines, the Commission was required to and has considered all of the Section 3553(a) factors. 28 U.S.C. §§ 991(b)(1), 994(b)(1), (c), (f), (g), (m); U.S.S.G. § 1A1.1 Editorial Note. Canvassing prior sentencing practice, the Commission identified and weighed aggravating and mitigating factors traditionally used in sentencing. *See* 28 U.S.C. § 994(m) (requiring Commission to "ascertain the average sentences . . . prior to the creation of the Commission"); U.S. Sentencing Commission, Supplementary Report on the Initial Sentencing Guidelines and Policy Statements, 16-17 (1987). Since then, the Commission has continued to study district and circuit court sentencing decisions and "modify its Guidelines in light of what it learns, thereby encouraging what it finds to be better sentencing practices" and "promot[ing] uniformity in the sentencing process." Booker, 125 S. Ct. at 766. Thus, in "most cases," the Commission has "adequately taken all relevant factors into account." 125 S. Ct. at 750; *see* Wilson I, 350 F. Supp. 2d at 912, 914-925; Peach, 356 F. Supp. 2d at 1020-22 (quoting Hon. Ricardo H. Hinjosa, Chair of the Sentencing Commission).

Second, for many of the Section 3553(a) factors, the Sentencing Commission has historical, comprehensive, and nationwide sources of information not available to any single judge.  In particular, sentencing within the applicable Guidelines range is the best way to avoid unwarranted sentencing disparities between judges, districts, and regions of the county.  Thus, there is "no meaningful substitute for the neutrality, coherence, and equality . . . that [the Guidelines] provide."  Wanning, 354 F. Supp. 2d at 1062; *see* Wilson I, 350 F. Supp. 2d at 925 ("the Guidelines are the only standard available to all judges around the country today," and "[f]or that reason alone . . . should be followed in all but the most exceptional cases").

Third, the Guidelines reflect the public's will, as expressed by their democratically-elected representatives.  "The decision about how harshly to punish crime in this country is a matter of legislative prerogative."  Wilson II, 355 F. Supp. 2d at 1287; *see* Booker, 125 S. Ct. at 768.  In exercising that prerogative, Congress put in place the "carefully-calibrated system" of the Guidelines, Wilson II, 355 F. Supp. 2d at 1276, "created the [Sentencing] Commission, approved the Guidelines, and then adjusted them over the years in an ongoing dialog with the Commission," Wilson I, 350 F. Supp. 2d at 918.  Thus, "[t]he factors the Guidelines consider, and the weight to be given those factors, have generally been approved by Congress."  Wilson II, 355 F. Supp. 2d at 1271, 1276, 1287; *see* Wanning, 354 F. Supp. 2d at 1060.  Moreover, "Guidelines sentences typically achieve congressional objectives" and "track the public's view as to just punishment."  Wilson II, 355 F. Supp. 2d at 1271; *see* Wilson I, 350 F. Supp. 2d at 917-18.

Finally, a sentence within the applicable Guidelines range will most likely be considered reasonable upon appellate review.  *See* White, 405 F.3d at 219 ("we have no reason to doubt that

most sentences will continue to fall within the applicable guidelines range"); <u>Mares</u>, 402 F.3d at 519 ("If the sentencing judge exercises her discretion to impose a sentence within a properly calculated Guideline range," reviewing court "will infer that the judge has considered all the factors for a fair sentence set forth in the Guidelines," and "it will be rare for a reviewing court to say such a sentence is 'unreasonable'"); *cf.* <u>United States v. George</u>, 403 F.3d 470, 473 (7th Cir. 2005) ("It is hard to conceive of below-range sentences that would be unreasonably high.").

In sum, a sentence within the Guidelines range reflects the federal courts' collective sentencing expertise accumulated over the past two decades, as guided by Congress, and is thus "reasonable." Accordingly, this Court should give "heavy weight" to the correctly-calculated Guidelines range in determining the appropriate sentence. <u>Wilson I</u>, 350 F. Supp. 2d at 912, 925; <u>Wilson II</u>, 355 F. Supp. 2d at 1286-87; *see also* <u>Wanning</u>, 354 F. Supp. 2d at 1061-62 ("substantial weight"); <u>Peach</u>, 356 F. Supp. 2d at 1021-22; <u>United States v. Kuhn</u>, 351 F. Supp. 2d 696, 709 (E.D. Mich. 2005).

## CONCLUSION

For the foregoing reasons, the United States respectfully submits that the Court should sentence Oscar Trinidad-Rodriquez within the applicable Guidelines range and impose a 51-month sentence.

Dated: November 4, 2005.

                        Respectfully submitted,
                        THOMAS PADDEN
                        Acting Chief
                        Narcotic and Dangerous Drug Section Criminal Division
                        United States Department of Justice
                        Washington, D.C.


By: _____/s/_____
PATRICK H. HEARN
Trial Attorney
Narcotic and Dangerous Drug Section
Criminal Division
United States Department of Justice
10th & Constitution Avenue, N.W.
Bond Building, ATTN: Patrick H. Hearn
Washington, D.C. 20530
(202) 305-7606

Attorney for Plaintiff
United States of America

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY The Government's Response in Opposition to Defendant Trinidad-Rodriguez's Sentencing Memorandum was sent to defendant's attorneys, Epifanio Morales Cruz, and Patricia Garrity via email on November 4, 2005.

                                  /s/
                              PATRICK H. HEARN
                              Trial Attorney
                              U.S. Department of Justice
                              Narcotic and Dangerous Drug Section
                              Washington, D.C.